UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ANTHONY TAYLOR, Individually and on Behalf
of All Others Similarly Situated,

             Plaintiff,

     -against-

BARNES & NOBLE, INC., LEONARD RIGGIO,
WILLIAM LYNCH, JR., and MICHAEL P.
HUSEBY,

             Defendants.

-----------------------------------------------------------------X

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

STEPHEN MAITLAND-LEWIS, Individually
and on Behalf of All Other Persons Similarly
Situated,

             Plaintiff,

     -against-

BARNES & NOBLE, INC., MICHAEL P.
HUSEBY, WILLIAM LYNCH, JR., and ALLEN
W. LINDSTROM,

             Defendants.

-----------------------------------------------------------------X

14-CV-108 (KMW) (FM)
14-CV-406 (KMW) (FM)
ORDER

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/16/14

KIMBA M. WOOD, U.S.D.J.:

     Two similar, putative securities fraud class actions against Barnes & Noble, Inc. ("Barnes

& Noble") and certain of its officers and directors have been filed, and are before this Court.

The two actions are *Taylor v. Barnes & Noble, Inc.*, 14-CV-108, and *Maintland-Lewis v. Barnes*

1

both actions, the plaintiffs allege that Barnes & Noble materially misled the public by deliberately making false or misleading statements, or failing to disclose facts to correct such misleading statements, artificially increasing the price of Barnes & Noble securities.

Jules Briskin ("Briskin") has moved to consolidate the two actions, appoint himself as lead plaintiff of the putative securities class, and approve his selection of Pomerantz LLP ("Pomerantz") as lead counsel for the class. (Motion to Consolidate 1–2 [*Taylor*, Dkt. No. 10]). The motion is unopposed. For the reasons stated below, the Court GRANTS the motion to consolidate the actions, appoints Jules Briskin as lead plaintiff, and appoints Pomerantz as lead counsel for the consolidated class.

## I.    Background

Barnes & Noble is "one of the nation's largest booksellers, providing customers easy and convenient access to books, magazines, newspapers and other content across its multi-channel distribution platform." (*Maintland-Lewis* Am. Compl. ¶ 2 [*Maintland-Lewis* Dkt. No. 3]).

On January 8, 2014, Plaintiff Anthony Taylor filed the *Taylor* action "on behalf of all purchasers of the common stock of Barnes & Noble between February 25, 2013 and December 5, 2013, inclusive." (*Taylor* Compl. ¶ 1 [*Taylor* Dkt. No. 1]). The putative class does not include Defendants, members of their immediate families, and their legal representatives. (*Id.* ¶ 11). Taylor alleges that Barnes & Noble and certain of its officers and directors "materially misled the investing public, thereby inflating the price of Barnes & Noble securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements . . . not false and misleading." (*Id.* ¶ 41). Specifically, Taylor alleges that Defendants misrepresented the value and market performance of its e-book reader, the "Nook." (*Taylor* Compl. ¶¶ 23–29, 31–33, 39)

2

On January 24, 2014, Plaintiff Stephen Maitland-Lewis filed the amended *Maitland-Lewis* Complaint "on behalf of a class consisting of all persons other than defendants who purchased Barnes & Noble securities between June 27, 2012 and December 5, 2013, inclusive." (*Maintland-Lewis* Am. Compl. ¶ 1). Maitland-Lewis alleges that Barnes & Noble and certain of its officers and directors made false and/or misleading statements during the class period and/or failed to disclose that:

> (1) Nook sales were significantly diminishing during the Company's fourth quarter 2013 (ended April 27, 2013); (2) the Nook segment was on track to lose money and the Company was not committed to sustaining the money losing segment; (3) the Company engaged in improper accounting practices, including by inappropriately allocating expenses between the Company's NOOK and Retail segments; (4) the Company lacked adequate internal controls over financial reporting; and, (5) as a result of the foregoing, the Company's statements were materially false and misleading at all times.

(*Id.* ¶ 9).

On March 10, 2014, Jules Briskin filed a motion to consolidate the above captioned cases, appoint himself as lead plaintiff, and appoint Pomerantz as lead counsel. The proposed class period ("Class Period") for the consolidated action runs from June 27, 2012, through December 5, 2013.

## II.   Discussion

### A.   Consolidation

Federal Rule of Civil Procedure 42(a) provides that a court may consolidate actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990), *cert. denied*, 498 U.S. 920 (1990). Consolidation is "a valuable and important tool of judicial administration" that should be "invoked to expedite trial

and eliminate unnecessary repetition and confusion." *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (internal quotation marks omitted).

Under Rule 42 and the Private Securities Litigation Reform Act (the "PSLRA"), actions need not be "identical" to allow for consolidation. *Pinkowitz v. Elan Corp., PLC*, 02-CV-865 et al., 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002) (Knapp, J.).

Courts have "broad discretion to determine whether consolidation is appropriate." *Johnson*, 899 F.2d at 1284; *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) (Buchwald, J.). Courts have looked to the particular facts of cases to determine if the anticipated benefits of consolidated actions, such as considerations of judicial economy and unnecessary costs to the parties, "outweigh potential prejudice to the parties." *Kaplan*, 240 F.R.D. at 91 ("[E]ach case . . . must be evaluated on its own facts." (internal quotation marks omitted)); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009) (Chin, J.).

The Court finds that consolidation is appropriate in this case.

### (i)   Common questions of law and fact

Both actions are putative securities class actions on behalf of all persons who purchased Barnes & Noble securities during partially overlapping time periods. The putative classes seek remedies against Barnes & Noble and several of its senior executives under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder. Both complaints allege that Defendants violated § 10(b) and Rule 10b-5 by making "untrue statements of material facts or omit[ing] to state material facts necessary in order to make the statements made . . . not misleading," (*Taylor* Compl. ¶¶ 22–24, 25, 27, 51–53); (*Maintland-Lewis* Am. Compl. ¶¶ 23–38, 54–61), Defendants' conducts artificially inflated or maintained the market price of Barnes & Noble securities, (*Maintland-Lewis* Am. Compl. ¶¶ 54,

4

59); (*Taylor* Compl. ¶¶ 31, 40, 42, 49, 53), and such acts were done knowingly or recklessly in

"disregard for the truth," (*Maintland-Lewis* Am. Compl. ¶¶ 54, 56); (*Taylor* Compl. ¶¶ 43, 51).

> Both complaints allege that the questions of law and fact that affect the Class are:

> > (1) whether the federal securities laws were violated by Defendants, (*Taylor* Compl. ¶ 15); (*Maintland-Lewis* Am. Compl. ¶ 47),
> > (2) whether "statements made by Defendants misrepresented material facts about the business, operations and management of Barnes & Noble," (*Taylor* Compl. ¶ 15); (*Maintland-Lewis* Am. Compl. ¶ 47), and
> > (3) the extent of the damage the Class members sustained and "the proper measure of damages," (*Taylor* Compl. ¶ 15); (*Maintland-Lewis* Am. Compl. ¶ 47).

The *Maintland-Lewis* Complaint lists three additional questions of law and fact common to the

Class: (1) "whether the Individual Defendants caused Barnes & Noble to issue false and

misleading financial statements during the Class Period," (2) "whether defendants acted

knowingly or recklessly in issuing false and misleading financial statements," and (3) "whether

the prices of Barnes & Noble securities during the Class Period were artificially inflated because

of the defendants' conduct complained of herein." (*Maintland-Lewis* Am. Compl. ¶ 47). The

additional factors listed in the *Maintland-Lewis* Complaint are also relevant to *Taylor*: the *Taylor*

Complaint alleges that Defendants "disseminated or approved . . . false statements . . . which

they knew or deliberately disregarded were misleading," (*Taylor* Compl. ¶¶ 43, 51), and that

Barnes & Noble securities prices were "artificially inflated," (*id.* ¶¶ 31, 40, 42, 49, 53).

> The Court finds that *Taylor* and *Maintland-Lewis* involve common questions of law *and*

fact, warranting consolidation. *See* Fed. R. Civ. P. 42(a); *Weltz v. Lee*, 199 F.R.D. 129, 131

(S.D.N.Y. 2001) (Batts, J.); *cf. Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 118 (S.D.N.Y.

2010) (Sweet, J.) (granting consolidation of six securities class actions, which violated §§ 10(b)

and 20(a), and Rule 10b-5 of the Exchange Act).

5

"[C]onsolidation is particularly appropriate in the context of securities class actions if the

complaints are based on the same public statements and reports and defendants will not be

prejudiced." *Bassin v. deCODE Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (Holwell,

J.) (internal quotation marks omitted). In such instances, consolidation would promote "judicial

convenience and economy" and avoid "unnecessary costs to the parties." *In re Bank of Am.*

*Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. at 268.

The allegations in the *Taylor* and *Maitland-Lewis* complaints are based on many of the

same public statements and reports:

> (1) On February 25, 2013, Barnes & Noble announced Defendant
> Leonard Riggio's plans to purchase the retail segment of Barnes
> & Noble. The press release did not disclose why Riggio was
> interested only in the retail segment. (*Taylor* Compl. ¶¶ 22–23);
> (*Maintland-Lewis* Am. Compl. ¶¶ 29–30).
> (2) On February 28, 2013, Defendant William J. Lynch, Jr.
> emphasized the strength of the Nook business and Barnes &
> Noble's commitment to the Nook business during a conference
> call. He also confirmed ongoing discussions between Riggio
> and the Barnes & Noble Board about Riggio's plans to purchase
> the retail segment. (*Taylor* Compl. ¶ 24); (*Maintland-Lewis* Am.
> Compl. ¶ 31).
> (3) On March 7, 2013, Barnes & Noble filed its quarterly financial
> report on Form 10-Q with the SEC, noting Nook's performance
> in the market. (*Taylor* Compl. ¶ 27); (*Maintland-Lewis* Am.
> Compl. ¶ 34)
> (4) On May 9, 2013, *Tech Crunch* reported that Microsoft was "in
> the process of making a $1 billion offer to purchase the entire
> NOOK operating segment." (*Taylor* Compl. ¶ 29); (*Maintland-
> Lewis* Am. Compl. ¶ 37). The news was picked up by many
> other major newspapers and online news websites. Barnes &
> Noble declined to comment, "*including refusing to deny the
> rumor.*" *Id.*

Both complaints allege that these events artificially misrepresented the status of Barnes &

Noble's Nook business, and increased Barnes & Noble stock prices at different times. The Court

finds that the inclusion of the same public statements and reports in both the *Taylor* and *Maitland-Lewis* complaints also favors consolidation.

### (ii) Differences in Class Period and Named Defendants

Consolidation may be appropriate even with "[d]ifferences in causes of action, defendants, or the class period," as long as such differences "do not outweigh the interests of judicial economy served by consolidation." *Kaplan*, 240 F.R.D. at 91. However, "considerations of convenience and economy, 'must yield to a paramount concern for a fair and impartial trial.'" *Faris v. Longtop Fin. Techs. Ltd.*, 11-CV-3658, 2011 WL 4597553, at *4 (S.D.N.Y. Oct. 4, 2011) (Scheindlin, J.) (quoting *Johnson*, 899 F.2d at 1285). Although the *Taylor* and *Maintland-Lewis* actions differ slightly in their class period and named defendants, consolidation is nonetheless appropriate.

The class period in *Maintland-Lewis* begins about eight months earlier than the class period in *Taylor*. (*Maintland-Lewis* Am. Compl. ¶ 1); (*Taylor* Compl. ¶ 1). However, "differences among the class periods proposed" do not "preclude consolidation," *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 402 (S.D.N.Y. 2004) (Sweet, J.), if there are "sufficiently common questions of fact and law," *Kaplan*, 240 F.R.D. at 91. Actions relying on a "common pattern" of allegations and arising from "a common course of conduct" during the non-overlapping period may be consolidated. *Id.* at 92 ("The dates on which the misrepresentations occurred do not change their nature." (internal quotation marks omitted)). Here, the allegations made during the non-overlapping period are of the same "nature" and "pattern" as the allegations during the overlapping period—Barnes & Noble's misrepresentation of its finances. In addition, the Form 10-K that Barnes & Noble filed on June 27, 2012, and that marks the beginning of the *Maitland-Lewis* class period, is mentioned

7

in the *Taylor* Complaint, which quotes a Barnes & Noble's report admitting that Form 10-K, among other documents, contained material errors. (*Taylor* Compl. ¶ 35).

Both actions are against Barnes & Noble, Leonard Riggio,[1] Michael P. Huseby, and William J. Lynch. (*Taylor* Compl. ¶¶ 6–9); (*Maintland-Lewis* Am. Compl. ¶¶ 16–20). *Maintland-Lewis* names an additional Defendant: Allen W. Lindstrom, Chief Financial Officer of Barnes & Noble. (*Maintland-Lewis* Am. Compl. ¶ 20). Differences in the named defendants do not necessarily bar consolidation of actions. *See Pinkowitz*, 2002 WL 1822118, at *3. Even with different named defendants, consolidation is appropriate if there are "[e]nough common and related issues . . . that it would needlessly waste both time and manpower to require separate trials." *Waldman v. Electrospace Corp.*, 68 F.R.D. 281, 284 (S.D.N.Y. 1975) (Werker, J.) (consolidating three actions, one of which had different named defendants). As set forth in the discussion above, there are sufficient "common and related issues" here that having one more Barnes & Noble officer listed as a defendant will not prejudice any party. *See id.*

The Court finds that the minor difference in the class periods, and the inclusion of an additional defendant in *Maintland-Lewis*, do not outweigh the benefits of consolidation. *See Pinkowitz*, 2002 WL 1822118, at *3–4.

## B.   Appointment of Lead Plaintiff

The selection of lead plaintiff in a securities class action is governed by PSLRA § 21D(a)(3)(B). The lead plaintiff is the person or group of persons deemed to be "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA directs the court to adopt a rebuttable presumption that the most adequate plaintiff is the person or group of persons that (1) "has either filed the complaint or made a motion in response

---

[1] Although Leonard Riggio's name is omitted from the caption of the *Maintland-Lewis* Complaint, he is described as a named defendant in the body of the Complaint. (*Maintland-Lewis* Am. Compl. ¶ 17).

to a notice"; (2) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption can be rebutted "only upon proof by a member of the purported plaintiff class" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Court finds that Briskin satisfies the requirements of lead plaintiff, as set forth in 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### (i) 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa): Timely Motion in Response to a Notice

On January 8, 2014, Robbins Geller Rudman & Dowd LLP, counsel for Plaintiff Taylor, published a notice in *PR Newswire* that announced the filing of the *Taylor* action "and advised investors of Barnes & Noble securities that they had until March 10, 2014, to file a motion to be appointed as Lead Plaintiff." (Mem. of Law in Supp. 5 [*Taylor* Dkt. No. 11]); (Barnes & Noble Investor Notice, Lieberman Decl. Ex. A [*Taylor* Dkt. No. 12]).

On March 10, 2014, Briskin filed the instant motion to be appointed as lead plaintiff and attached a certification indicating his willingness to "serve as a representative party on behalf of a Class of investors who purchased or acquired Barnes & Noble securities during the class period, including providing testimony at deposition and trial, if necessary." (Briskin Certification ¶ 4, Lieberman Decl. Ex. B).

The Court finds that Briskin satisfies the first requirement of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa), because he made a timely motion in response to the notice of class action.

9

U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa); *see Lintz v. Agria Corp.*, 08-CV-3536 et al., 2008 WL
5191087 at *1 (S.D.N.Y. Dec. 3, 2008) (Pauley, J.).

### (ii)    15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb): The Largest Financial Interest in the Relief Sought by the Class

In determining whether a potential lead plaintiff has the largest financial interest, in
accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), courts in the Second Circuit have
consistently relied on the four-pronged test derived from *Lax v. First Merch. Acceptance Corp.*,
97-C-2715 et al., 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). *See, e.g.*, *Varghese v. China
Shenghuo Pharm. Holding, Inc.*, 589 F. Supp. 2d 388, 394–95 (S.D.N.Y. 2008) (Marrero J.)
(relying on the "*Lax* test" factors); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y.
2005) (Scheindlin, J.) (same); *Pirelli Armstrong Tire Corp. Retiree Medical Benefits*, 229 F.R.D.
at 404 (same). The "*Lax* test" considers four factors in determining the largest financial interest,
with the last factor weighing more heavily than the rest:

> (1) the total number of shares purchased during the class period; (2)
> the net shares purchased during the class period (in other words, the
> difference between the number of shares purchased and the number
> of shares sold during the class period); (3) the net funds expended
> during the class period (in other words, the difference between the
> amount spent to purchase shares and the amount received for the
> sale of shares during the class period); and (4) the approximate
> losses suffered.

*Kaplan*, 240 F.R.D. at 93; *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y.
2011) (Buchwald, J.) (placing the most emphasis on the fourth *Lax* factor and collecting cases);
*Lintz*, 2008 WL 5191087, at *2 (same).

During the Class Period, Briskin (1) purchased a total of 71,710 shares of Barnes &
Noble securities, (2) purchased a net amount of 618 shares of Barnes & Noble securities
(because he sold 71,092 shares during the Class Period), (3) expended $1,300,244 on his

purchases of Barnes & Noble securities, and (4) suffered a loss of $34,787 as a result of the alleged fraud.[2] (Briskin Loss Chart, Lieberman Decl. Ex. D); (Mem. of Law in Supp. 6).

The Court finds that Briskin satisfies the PSLRA's second requirement for lead plaintiff, because he "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *see Varghese*, 589 F. Supp. 2d at 394–96. Briskin's motion is unopposed; no other potential lead plaintiff disputes Briskin's contention that he has the largest financial interest in the relief sought.

### (iii)    15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc): Requirements of Rule 23 of the Federal Rules of Civil Procedure

The only relevant provisions of Federal Rule of Civil Procedure 23 in the determination of lead plaintiff under the PSLRA are the typicality and adequacy requirements. *See Teran v. Subaye, Inc.*, 11-CV-2614 et al., 2011 WL 4357362, at *5 (S.D.N.Y. Sept. 16, 2011) (Buchwald, J.).

The typicality requirement of Rule 23(a)(3) is established where "'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Canson v. WebMD Health Corp.*, 11-CV-5382, 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011) (Keenan, J.) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he Lead Plaintiff's claims do not

---

[2] Briskin's shares are under both his name and Stephen LaRosa's name.  Briskin is LaRosa's investment advisor and has "full discretionary authority" over LaRosa's brokerage accounts. (Mem. of Law in Supp. 5). Briskin invested in the publicly traded securities of Barnes & Noble on LaRosa's behalf. (*Id.*). LaRosa has given Briskin an assignment "transferring all of [LaRosa's] rights, title, and interest in any and all claims, demands and causes of action of any kind to him in connection with the investments of Barnes & Noble securities." (*Id*); (Briskin Assignment, Lieberman Decl. Ex. C).  Briskin therefore has standing to pursue LaRosa's claims on his behalf. *See, e g , Faris*, 2011 WL 4597553 at *5 (finding assignment that transferred to investment manager "for purposes of prosecution and collection, all rights, title and interest of the Funds in the Funds' claims, demands or causes of action against any defendant relating to any security issued by Longtop Financial Technologies Limited," conferred standing to investment manager).

have to be identical to the other class members' claims." *Id.* (internal quotation marks omitted); *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05-CV-10240 et al., 2007 WL 2230177, at \*13 (S.D.N.Y. July 27, 2007) (McMahon, J.).

Briskin alleges that Defendants "violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Barnes & Noble, or omitted to state material facts necessary to make the statements they did make not misleading." (Mem. of Law in Supp. 8). "Briskin, as did all members of the Class, purchased Barnes & Noble securities shares during the Class Period at prices artificially inflated by [D]efendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions." (*Id.*). Briskin's claims are based on the same legal theory—violation of the Exchange Act—and arise from the same events and course of conduct, as the class's claims. Thus, Briskin's claims are typical to those of the class.

The adequacy requirement of Rule 23 is satisfied if the lead plaintiff "fairly and adequately protect[s] the interests of the class." Fed. R. Civ. P. 23(a)(4). In order for the requirement to be satisfied, "(1) there should be no conflict between the proposed lead plaintiff and the members of the class, (2) the selected counsel should be qualified, experienced, and able to conduct the litigation, and (3) the lead plaintiff should have a sufficient interest in the outcome to insure vigorous advocacy." *Xianglin Shi v. Sina Corp.*, 05-CV-2154 et al., 2005 WL 1561438, at \*3 (S.D.N.Y. July 1, 2005) (Buchwald, J.) (internal quotation marks omitted).

Briskin satisfies the adequacy requirements because (1) no conflict between Briskin and the members of the class was presented or mentioned in the documents presented to the Court, (2) the selected counsel is qualified (as discussed below in Section C), and (3) Briskin has sufficient interest in the outcome, because he suffered significant damages from Barnes &

Noble's purported misrepresentations. (Briskin Loss Chart, Lieberman Decl. Ex. D.); (Briskin Certification, Lieberman Decl. Ex. B).

### (iv)   15 U.S.C. § 78u-4(a)(3)(B)(iii)(II): Rebuttable Presumption

The presumption in favor of appointing Briskin as lead plaintiff may be rebutted if a member of the purported class can prove that Briskin "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Briskin's ability to "fairly and adequately protect the interests of the class" is demonstrated in Section B of this Discussion. Briskin has stated that he is "willing" to serve as the lead plaintiff and "not . . . accept any payment for serving as a [lead plaintiff] . . . beyond [his] pro rata share of any recovery." (Briskin Certification ¶¶ 4, 7, Lieberman Decl. Ex. B).

Moreover, Briskin "is not aware of any unique defenses [D]efendants could raise that would render him inadequate to represent the Class." (Mem. of Law in Supp. 9). For instance, Briskin has not purchased Barnes & Noble securities "at the direction of plaintiffs [sic] counsel or in order to participate in any private action arising under the Securities Act or Exchange Act," has "not sought to serve as a representative party on behalf of a Class under the federal securities laws" during the three years preceding the date that he signed his certification, and has purchased Barnes & Noble securities during the Class Period. (Briskin Certification ¶¶ 3, 6, Lieberman Decl. Ex. B); (Briskin Loss Chart, Lieberman Decl. Ex. D). Therefore, Briskin is a "typical" member of the class and is not subject to any unique defenses.

The Court finds that the presumption in favor of appointing Briskin as lead plaintiff has not been rebutted.

### C.   Appointment of Lead Counsel

13

The PSLRA provides that the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court has discretion to interfere with lead plaintiff's selection of lead counsel "when warranted to protect the interests of the class." *Teran*, 2011 WL 4357362, at *9 (noting that the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention" (internal quotation marks omitted)).

Briskin has selected Pomerantz as lead counsel. When making the decision to approve a lead counsel, courts in the Second Circuit have emphasized a proposed counsel's experience. *See, e.g.*, *Varghese*, 589 F. Supp. 2d at 398 (considering the counsel's "extensive experience in prosecuting securities fraud actions" before approving the lead plaintiff's selection); *Xianglin Shi*, 2005 WL 1561438, at *5 (same); *In re Elan Corp. Sec. Litig.*, 2002 WL 31720410, at *5 (same). Pomerantz has extensive experience in the area of securities litigation and class actions. The firm's resume lists over twenty prominent securities class actions that Pomerantz has litigated since 1989. (Firm Resume 1–3, Lieberman Decl. Ex. E). Pomerantz reached successful outcomes in many of these cases, including *In re Comverse Tech., Inc. Sec. Litig.*, 543 F. Supp. 2d 134 (E.D.N.Y. 2008), in which Pomerantz obtained a $225 million settlement, (Firm Resume 1, Lieberman Decl. Ex. E), and *In re Salomon Analyst AT&T Litig.*, 350 F. Supp. 2d 455 (S.D.N.Y. 2004) (Lynch, J.), in which Pomerantz recovered $74.74 million in settlement, (Firm Resume 2, Lieberman Decl. Ex. E).

The Court finds Pomerantz has the requisite experience to serve as lead counsel, and thus will be able to effectively prosecute the consolidated action.

**III. Conclusion**

14

For the reasons stated above, the Court GRANTS the motion to consolidate the actions,

*Taylor v. Barnes & Noble*, 14-CV-108, and *Maintland-Lewis v. Barnes & Noble*, 14-CV-406.

The Court APPOINTS Jules Briskin as lead plaintiff and Pomerantz LLP as lead counsel.

The Rule 16 Conference, which was adjourned pending the appointment of a lead

plaintiff, *(see* Order on Motion to Adjourn Conference [*Taylor* Dkt. No. 9]), shall take place on

July 24, 2014 at 4:30 p.m.

Every pleading filed in the consolidated actions shall bear the following caption:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re BARNES & NOBLE, INC. SECURITIES LITIGATION

This Document Relates To:

14-CV-108

SO ORDERED.

Dated: New York, New York
     July **16**, 2014

                                       *Kimba M. Wood*

                                       Kimba M. Wood
                                       United States District Judge